JOAN KERRY BADER
California State Bar No. 172586
964 Fifth Avenue, Suite 214
San Diego, California  92101-6128
Telephone:  (619) 699-5995
FAX (619) 699-5996
Attorney for Defendant GONZALEZ


                    UNITED STATES DISTRICT COURT

                  SOUTHERN DISTRICT OF CALIFORNIA

                **(HONORABLE JANIS L. SAMMARTINO)**

UNITED STATES OF AMERICA,      )     CASE NO. 07CR2977JLS
                               )
              Plaintiff,       )
                               )
v.                             )     NOTICE OF MOTION AND
                               )     MOTION TO SUPPRESS
ALAN O. GONZALEZ,              )
                               )
              Defendant.       )
_____)

TO:  KAREN HEWITT, UNITED STATES ATTORNEY;
     STEVEN DESALVO, ASSISTANT UNITED STATES ATTORNEY:

     The defendant, Alan Gonzalez, by and through his counsel,

Kerry Bader, respectfully asks this Court to grant the motions

listed below.

Dated: December 17, 2007      //JOAN KERRY BADER
                              Joan Kerry Bader,
                              Attorney for Defendant
                              Gonzalez

//

//

//

//

//

//

JOAN KERRY BADER
California State Bar No. 172586
964 Fifth Avenue, Suite 214
San Diego, California  92101-6128
Telephone:  (619) 699-5995
fax (619)699-5996
Attorney for Defendant GONZALEZ

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**(HONORABLE JANIS L. SAMMARTINO)**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 07CR2977JLS |
| Plaintiff, | ) | |
| v. | ) | MOTION TO SUPPRESS STATEMENTS |
| ALAN O. GONZALEZ, | ) | |
| Defendant. | ) | |

**I.**

**STATEMENT OF FACTS**

On or about August 30, 2007, Mr. Gonzalez was arrested at the Calexico Port of Entry in the Southern District of California.  He has been indicted and is charged with importation of approximately 106.8 pounds of marijuana, a violation of 21 USC sections 952, 960.

**II.**

**ANY STATEMENTS MADE BY MR. GONZALEZ SHOULD BE SUPPRESSED**

**A.    OVERVIEW**

**1. The Government Failed to Comply With Miranda**

Mr. Gonzalez was arrested at the Calexico Port of Entry in Imperial County California.  His statements were taken as a result of coercion and fundamental, material

1   misrepresentations of his Constitutional rights on the part

2   of the agents.   Thus Mr. Gonzalez' statements were taken in

3   violation of the dictates of <u>Miranda v. Arizona</u> because they

4   were made unknowingly, involuntarily and unintelligently.

5   384 U.S. 436 (1966).[1]

6        As such both his Fifth Amendment rights to Due Process

7   and his right to remain silent and not be a witness against

8   himself have been abridged, as well as his right to be tried

9   by reliable evidence.   The extraction of his statements also

10  violated Mr. Gonzalez' Sixth Amendment right to Counsel (in

11  that he was provided with misstatements of law and false

12  legal advice by the agents in their effort to extract a

13  <u>Miranda</u> waiver, and his Sixth Amendment right to confront

14  and cross-examine his accusers as they interrogated him.

15  Accordingly, all of his statements must be suppressed.

16       **2.   <u>Miranda Warnings Must Precede Custodial
         Interrogation.</u>**

17
         The Supreme Court has held that the prosecution may not
18
    use statements, whether exculpatory or inculpatory, stemming
19
    from a custodial interrogation of the defendant unless it
20
    demonstrates the use of procedural safeguards effective to
21
    secure the privilege against self-incrimination.   <u>Miranda v.</u>
22
    <u>Arizona</u>, 384 U.S. 436, 444 (1966).   Custodial interrogation
23
    is questioning initiated by law enforcement officers after a
24

25
         [1]A copy of the DVD of Mr. Gonzalez' interrogation will be provided by the Court separately, along with a
26  transcript of the interrogation, which is not yet complete.  A determination of whether <u>Miranda</u> warnings were given
    properly and whether or not a waiver was voluntarily, intelligently or knowingly made is based on a "totality of the
27  circumstances" analysis.  Thus, a review of the DVD by the Court is critical.  Again, the defense is not providing
    this DVD for the purpose of having it used against Mr. Gonzalez, but so that the Court will see that the statements
28  were taken in violation of statutory precedent and Constitutional norms.

1  person has been taken into custody or otherwise deprived of
2  his freedom of action in any significant way.  Id.; see
3  Orozco v. Texas, 394 U.S. 324, 327 (1969).

4      A suspect will be held to be in custody if the actions
5  of the interrogating officers and the surrounding
6  circumstances, fairly construed, would reasonably have led
7  him to believe he could not freely leave.  See United States
8  v. Lee, 699 F.2d 466, 468 (9th Cir. 1982); United States v.
9  Bekowies, 432 F.2d 8, 12 (9th Cir. 1970).  Here, Mr.
10  Gonzalez was not free to leave and was under the custody of
11  a federal agent from the minute, if not before the minute,
12  he arrived at the primary inspection at the Port of Entry.

13      Once a person is in custody, Miranda warnings must be
14  given prior to any interrogation.  See United States v.
15  Estrada-Lucas, 651 F.2d 1261, 1265 (9th Cir. 1980).  Those
16  warnings must advise the defendant of each of his or her
17  "critical" rights.  United States v. Bland, 908 F.2d 471,
18  474 (9th Cir. 1990).  If a defendant indicates that he
19  wishes to remain silent or requests counsel, the
20  interrogation must cease.  Miranda, 384 U.S. at 474.  See
21  also: Edwards v. Arizona, 451 U.S. 484 (1981).

22      **3. Mr. Gonzalez invoked his right to remain silent and the agents would not honor his invocation**
23  once Mr. Gonzalez was read his rights and asked if he
24  would sign a Miranda waiver form, it appears he said "No."
25  the agents should have honored this decision to decline to
26  speak with them.  Id. Instead they sought to convince him of
27  their need for his statements, that they needed to make a
28  "determination" without explaining what that "determination"

4                                          07cr2977JLS

1   was and that they needed Mr. Gonzalez' "intelligence" and
2   that this was his opportunity to tell his side of the story.
3       This does not comply with the Supreme Court which
4   requires that "the accused must be adequately and
5   effectively apprised of his rights and the exercise of those
6   rights must be fully honored." <u>Missouri v. Seibert</u>, 542 U.S.
7   600, 608 (2004) *quoting* <u>Miranda v. Arizona</u>, 384 U.S. 467.
8       The interrogation in this matter was carefully
9   calculated and executed to extract a <u>Miranda</u> waiver.  The
10  agents spent a good deal of time during the first part of
11  the interrogation, where they had not even <u>Mirandized</u> Mr.
12  Gonzalez yet, asking him question after question pertaining
13  to irrelevant, highly personal facts, including many
14  questions about his family.
15      Then, in the middle of the interrogation, Mr. Gonzalez
16  was told to pull his chair up to Agent McDonald's desk and
17  to read his rights and initial next to each one.  When he
18  finished, he was asked if he would sign to waive the rights
19  and while he pushed his chair back against the wall away
20  from the agents he said "No."
21      The second half of the interrogation immediately began
22  as the agents started trying to convince Mr. Gonzalez to
23  waive his rights.  To do so, the agents repeatedly told Mr.
24  Gonzalez he was being given the opportunity to tell his side
25  of the story.
26      Indeed, from the beginning of the interrogation the
27  agents had told Mr. Gonzalez that they would give him an
28

"opportunity" and a "chance" to "tell [his] side of the story."

When the agents finally told Mr. Gonzalez they were going to read him his <u>Miranda</u> rights, they described this as his opportunity "to tell [his] side of the story" which is the exact opposite of advising someone that they have a right to remain silent. "[W]hen *Miranda* warnings are inserted in the midst of coordinated and continuing interrogation, they are likely to mislead and "depriv[e] a defendant of knowledge essential to his ability to understand the nature of his rights and the consequences of abandoning them." <u>Moran v. Burbine</u>, 475 U.S. 412 (1986).

"Any evidence that the accused was threatened, tricked, or cajoled into a waiver will, of course, show that the Defendant did not voluntarily waive his privilege. The requirement of warnings and waiver of rights is fundamental with respect to the Fifth Amendment and not simply a preliminary ritual to existing methods of interrogation" which is what happened here. <u>Miranda v. Arizona</u>, 384 U.S. at 467.

By telling him this was his *chance to talk*, the agents stated the exact opposite of what his Fifth Amendment rights are, that this was his opportunity to *remain silent*. And, instead, of making sure he knew that his words could be used against him, they repeatedly advised him that his words were needed for their purposes of making some vague, undefined "determination" and for obtaining intelligence only. This amounts to improper police tactics designed to extract the

07cr2977JLS

waiver.   The agents' strategy completely undermined the _Miranda_ warnings.

**B.   THE GOVERNMENT'S PROFERRED MIRANDA WAIVER IS NOT VALID**

**1. _A waiver of Miranda is only valid where the suspect has a full awareness of the nature of the right being abandoned and the consequences of the decision to abandon it_**

Assuming the Government argues that Mr. Gonzalez knowingly and intelligently signed a waiver of rights form, the Court must examine the validity of the waiver which depends upon the particular facts and circumstances surrounding the case, including the background, experience, and conduct of the accused.   Edwards v. Arizona, 451 U.S. 477, 472 (1981); Johnson v. Zerbst, 304 U.S. 458, 464 (1983).   See also United States v. Heldt, 745 F.2d at 1277; United States v. McCrary, 643 F.2d 323, 328-29 (9th Cir. 1981).

**2. The Government Must Demonstrate That Mr. Gonzalez' Statements Were Made Voluntarily, Knowingly, and Intelligently.**

In Derrick v. Peterson, 924 F.2d 813 (9th Cir. 1990), the Ninth Circuit confirmed that the issue of the validity of a _Miranda_ waiver requires a two prong analysis:  the waiver must be both (1) voluntary and (2) knowing and intelligent.   Id. at 820.   The voluntariness prong of this analysis "is equivalent to the voluntariness inquiry under the [Fifth] Amendment . . . ."   Id.   See infra.

**3. The government must prove that the suspect had the requisite level of comprehension of the _Miranda_ waiver and the waiver must be uncoerced**

7

The second prong, requiring that the waiver be "*knowing and intelligent,*" mandates an inquiry into whether "*the waiver [was] made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it.*" Id. at 820-21 (quoting Colorado v. Spring, 479 U.S. 564, 573 (1987)).  This inquiry requires that the court determine whether "*the requisite level of comprehension*" *existed before the purported waiver may be upheld.* Id. (Emphasis added).

Thus, "*[o]nly if the `totality of the circumstances surrounding the interrogation' reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the Miranda rights have been waived.*" Id. (quoting Colorado v. Spring, 479 U.S. at 573) (citations omitted) (emphasis in original).

### 4.  An involuntary waiver is determined by examining the entire course of police conduct, including, but not limited to, coercion, pressure and isolating the suspect

Even when the procedural safeguards of Miranda have been satisfied, a defendant in a criminal case is deprived of due process of law if the conviction is founded upon an involuntary confession.  Arizona v. Fulminante, 499 U.S. 279 (1991); Jackson v. Denno, 378 U.S. 368, 387 (1964).  The government bears the burden of proving that a confession is voluntary by a preponderance of the evidence.  Lego v. Twomey, 404 U.S. 477, 483 (1972).

The Court must examine all "the surrounding circumstances and the entire course of police conduct."

1  Oregon v. Elstad, 470 U.S. 298 (1985);  Missouri v. Seibert,

2  542 U.S. 298 (2004).  The viewing of the DVD shows almost

3  all of the circumstances of this case for purposes of

4  determining whether the statements are admissible.

5      The Supreme Court is cognizant of interrogations such

6  as that which took place in this case.  In Dickerson v.

7  United States, the Court stated:

8           In *Miranda*, we noted that the advent of modern
          custodial interrogation brought with it increased
9         concern about confessions obtained by coercion. 384
          U.S at 445-458.  Because custodial police
10        interrogation, by its very nature, isolates and
          pressures the individual, we stated that "even
11        without employing brutality, the 'third degree' or
          [other] specific strategems,... custodial
12        interrogation exacts a heavy toll on individual
          liberty and trades on the weaknesses of
13        individuals. 530 U.S. 428 434-435 (2000).

14

15     When interrogation continues without the presence of an

16 attorney, and a statement is taken, *a heavy burden rests on*

17 *the government to demonstrate that the defendant*

18 *intelligently and voluntarily waived his privilege against*

19 *self-incrimination and his right to retained or appointed*

20 *counsel*.  Miranda, 384 U.S. at 475 (italics added).

21     There was no lawful waiver in this case.  Here, the DVD

22 showing the interrogation proves that the agents used

23 fraudulent statements, deceit, and obfuscation to extract a

24 "waiver" from Mr. Gonzalez.

25                              **III.**

26 **THE GOVERNMENT NEEDS TO REMEMBER THAT IT IS THE PARTY THAT
CARRIES THE BURDEN OF PROVING THAT STATEMENTS OF A SUSPECT
ARE MADE VOLUNTARILY, KNOWINGLY, INTELLIGENTLY AND WITH A
27 FULL UNDERSTANDING OF THE CONSEQUENCES OF WAIVING HIS
*MIRANDA* RIGHTS *AND* THAT THE DETERMINATION IS BASED ON "THE
28 TOTALITY OF THE CIRCUMSTANCES"**

1

2      In its initial response brief in this matter, the

3  government relied upon two statements stemming from the

4  interrogation in its effort to convince the government that

5  Mr. Gonzalez validly waived his Miranda rights.

6      The Government needs to take a genuine look at the

7  *entirety of* its DVD in this case instead of taking two

8  statements out of context so that it can see and be honest

9  about *all* of the circumstances surrounding the

10  interrogation.

11      In doing so, the Government will see the deception, the

12  leading questions and the *timing* of the questions, as the

13  agents slowly convince Mr. Gonzalez that his statements will

14  actually help him and they will them and that they will only

15  be heard by "the judge."

16      The government will see that Mr. Gonzalez was genuinely

17  reluctant to speak with the agents.  After they rushed him

18  through their Miranda form without explaining his rights,

19  Agent McDonald asked him if he wanted to sign the form.  Not

20  only did Mr. Gonzalez say "No," but he pushed his seat back

21  away from the table, away from the agents and away from the

22  form.

23      The entire context of the interrogation is set by Agent

24  McDonald, in the very beginning:

25

26      The DVD starts at 11:14 a.m. with Agents McDonald and

27  Henderson.  Agent McDonald is in a blue uniform while he

28  waits for Agent Henderson (plain clothes) to bring Mr.

Gonzalez into the office which has a desk, several chairs, a
filing cabinet with a phone on top of it, a printer and a
computer.  The DVD recording device is evidently hidden in
the filing cabinet as that is where the agents reach to turn
it on and off before and after Mr. Gonzalez is in the room.

Agent Henderson rummages through paperwork on his
clipboard while he waits for Henderson to bring Mr.
Gonzalez.

After Mr. Gonzalez is brought in, McDonald asks him his
full name.  He introduces himself and Henderson.  He asks if
Mr. Gonzalez speaks English (which he does).  He shows Mr.
Gonzalez something, presumably his badge.  McDonald proceeds
to tell Mr. Gonzalez he wants to start by obtaining
biographic information, for example, his address and his
name.

McDonald then proceeds to tell Mr. Gonzalez that they
are just here **"gather the facts, ok?"**  He tells him: **"We're
not here to judge you.  This is your opportunity to give us
your side of the story, ok?  And we'll go on from there.
Ok?"**  This admonition sets the stage and the theme for the
entire interrogation.

Agent McDonald then proceeds to ask where Mr. Gonzalez
was born, his citizenship, his Social Security Number, his
marital status and his occupation.

While setting the stage that will ensure the outcome,
the agents completely leave out the most important issue
here, Mr. Gonzalez' Constitutional rights that, instead of

1  this being his opportunity to tell his side of the story, it
2  is his opportunity to remain silent.

3      The agents go on to show Mr. Gonzalez a photograph of
4  his driver's license, confirming that it is from Arizona and
5  that he is 21 years old.  They then ask for his father's
6  full name.  Mr. Gonzalez asks, "have they been notified
7  yet?"  (Meaning his parents).
8  In response, McDonald says "No" and immediately asks,
9  "approximately how old is he?"

10     Lawyers viewing this exchange ask themselves, why is
11 the age of the suspect's father more important than advising
12 Mr. Gonzalez of his Miranda rights?  This is an "isolation"
13 technique.  The agents deliberately separate Mr. Gonzalez
14 from his family yet demand more and more information out of
15 him about their exact address, his mother's full name,
16 whether they are married, whether Mr. Gonzalez has children,
17 his child's exact, full name, if his son is Alan Gonzalez
18 "junior," his age and where he lives with his mother.

19     The totality of the circumstances is illustrated by
20 other irrelevant questions that could have come after
21 Miranda warnings, if at all.  Instead of giving the Miranda
22 warnings the agent asks about scars and tatoos and if Mr.
23 Gonzalez wants water.

24     However, when Mr. Gonzalez asks to use the phone,
25 McDonald curtly tells him, "Not yet."  Mr. Gonzalez' concern
26 about his legal situation is evident when he counters
27 timidly, "Not yet?"  If water is being offered, why not a
28 phone call?  There's a phone above his head on the filing

cabinet and his own phone is two feet or so away from him at McDonald's feet.  The only obvious answer is because the agents did not want Mr. Gonzalez to invoke his right to remain silent.  They did not want him to get advice from anyone but themselves.

McDonald continues to go through his paperwork. Henderson returns with water and leaves again, and Mr. Gonzalez says meekly, "And sir, was it marijuana?" McDonald responds: "Hold on, hold on, we're going to give you a chance.  We're going to give you a chance to talk."

First of all, contrary to the Government's assertion in its brief, Mr. Gonzalez' statement is not an admission of knowledge: he does not even know what the narcotic is.  The statement indicates that Mr. Gonzalez knows he under arrest and wants to know why he is under arrest, a fair question.

Most importantly, instead of telling a suspect that he should just "hold on" and that they would give him a chance to talk, they should have said something like: "You need to remember, sir, you are under arrest, and you have the right to remain silent as anything you do say to us can and will used against you in a court of law."  Instead, the admonition was, we want to talk to you in a minute and you are going to talk to us.

Since when have <u>Miranda</u> warnings ever been described as a suspect's "chance to talk" or his "opportunity to tell his side of the story"?

They set it up as if he was being granted a "privilege" to speak, not a "right" to remain silent.

07cr2977JLS

The totality of the circumstances are clear on this DVD: genuine, undiluted <u>Miranda</u> warnings were to be avoided at all costs by these agents.  This would be achieved by first focusing on irrelevant, non-related  matters to distract him.  Then they would rush him through their <u>Miranda</u> form.

All the while key phrases were to be repeated, such as "we'll give you a chance" and "we'll give you an opportunity" and "you can tell your side of the story." This is simple, effective psychologically effective watering down of <u>Miranda</u> rights.

Note the timing of these phrases:

Henderson comes back again and McDonald tells Mr. Gonzalez to slide his chair over to his desk.  Their heads are close together over the desk.  Henderson is about two feet away, his legs stretched out before him. His arms above his head, crossed.

McDonald asks Mr. Gonzalez if he is able read, to which Mr. Gonzalez responds, "yes."

McDonald reiterates his theme by telling Mr. Gonzalez the following:

<u>Ok, we're going to advise you of your rights.  This is your opportunity to give us your side of the story but before we ask you any questions you have to read and initial each one of these lines</u>.  Ok, all right, here's the pen.

This is astonishing.  Here we have federal law enforcement officers telling a suspect he is about to read

his Miranda rights which include the right to remain silent
and he prefaces it with:

"This is your opportunity to give us your side of the
story."  This is not an accurate definition of Miranda
rights.  It is the exact opposite.

Mr. Gonzalez' fundamental Constitutional right that the
Supreme Court requires the officers to advise every suspect
is that he has the right to remain silent.  Neither the
Fifth Amendment nor do Miranda warnings include the right to
tell your side of the story.

This false admonition directly contravenes the
requirement that a suspect be advised that his statements
can and will be used against him in a court of law.

After rushing Mr, Gonzalez through his rights, as the
agents' form describes them, **Agent McDonald** says,

"Ok.  All right.  Thank you.  So do you wish to answer
the *questions?"*

*There is a pause and* **Mr. Gonzalez** *pushes back his chair
against the wall away from the desk, saying "No."  He leans
back in his chair and he wipes his face with a cloth.*

***Agent Henderson*** *suddenly starts waving his arms around
over his head and says,*

Look, here's the deal – here's the deal.  Like you
said, you don't have to talk to us, but we have to make
a determination as to what is going on here.

**Mr. Gonzalez***:* "I know."

The "explanation" of how his words could and would be
used was not only never explained, but the suspect was

misled into believing that the agents had to have his
statements because there was some sort of vague, undefined
determination they *had* to make about what was going on
there.

Then, instead of explaining his rights, much less
honoring his right to remain silent, they *tell him what to
say -- they tell him to make an incriminating statement
which they are now trying to use against him*:

> **Agent Henderson**: Look, we've got you. We've got
> another vehicle exactly the same way yours is [not
> exactly], so this is your opportunity to kind of say,
> 'hey, it's not my stuff.'  You know what I mean?

> **Mr. Gonalez**: yeah.

> This is incredible.  Not only have the agents told Mr.
> Gonzalez to speak, they told him what to say!  The
> agents should be sanctioned and the statements
> suppressed.

> **Agent Henderson** continued:

> I don't think that this is your stuff, but this is your
> opportunity to tell as that.  Ok, so do you think you
> want to talk to us and tell us what happened today?

There is no legally accurate explanation of Mr.
Gonzalez' rights here.  He was lied to about his rights and
the ramifications of waiving them.  *He was told his words
would benefit him if he said the drugs did not belong to
him*.

The agents' advice directly contradicts the advice that
is to be conveyed in a valid <u>Miranda</u> warning.

Mr. Gonzalez was also told his words would only go to
the judge.  Again, this is an inaccurate admonition.  These
agents failed to explain that by going to the judge, his

07cr2977JLS

words would be used against him, *not in his favor*, as they claimed.

They also failed to tell him in any way, shape or form, that his words would not just go to a judge, but they would goto a prosecutor so he could be set up for prosecution before a grand jury and a criminal trial jury for the specific purpose of hearing what he told the agents.

By lying to Mr. Gonzalez by telling him they knew nothing about whether he would do jail time if he spoke with them, they lied to him about the consequences of waiving his rights.  This adverse legal advice makes a mockery of one's Constitutional rights by failing to advise him of the true consequences of waiving his rights.

In order to obtain a voluntary, knowing and intelligent waiver, the Government must prove that 1.  The suspect's decision not to exercise his rights was uncoerced, 2. That he at all times knew that he could stand mute and request a lawyer, and 3.  *That he was aware of the state's intention to use his statements to secure a conviction*.  Only then is the waiver valid as a matter of law. <u>United States v. Jalloh</u>, 2006 U.S. Dist. LEXIS 89223.

While agents and police have been permitted to lie to suspects, **<u>there is no known precedent allowing agents to lie about the suspect's Constitutional rights or the consequences of waiving them</u>**.  All courts agree that a suspect must be given a proper advisal of his or her rights that the suspect truly understands, along with the consequences of waiving them prior to waiving them.

07cr2977JLS

The lies were made by the agents in their effort to convince Mr. Gonzalez to waive his right to remain silent and for no other reason.  Why else would they lie and say they needed his "intel"?  Why else would they lie and tell him his words would not go beyond the room they were in?  Why else would they say it was his "chance" and his "opportunity to tell [his] side of the story" over and over again instead of telling him he had a right to remain silent and a right to a lawyer, over and over again?   These warnings were said once, and no more, and they were not defined nor were the consequences of waiving them explained.

> [A]ny evidence that the accused was threatened, tricked or cajoled into a waiver will, of course, show that the defendant did not voluntarily waive his privilege.  The requirement of warnings and waiver of rights is fundamental with respect to the Fifth Amendment privilege and not simply a preliminary ritual to existing methods of interrogation. Miranda v. Arizona, 384 U.S. 436, 476 (1968). *And see, generally,* United States v. Balsys, 524 U.S. 666 (1998); Minnesota v. Murphy, 465 U.S. (1984).

In their effort to extract a waiver, which Mr. Gonzalez was visibly reluctant to give, the agents went so far as to tell Mr. Gonzalez they just wanted his "intelligence" and "intel" (which they never wanted nor received anyway; they just wanted the basic elements of the crime).

The agents even pretended to empathize with his "plight" of having to reveal what he thought might be dangerous information, and that they needed his facts for their intelligence gathering, and for their job duties.  The even played upon his fear for his child as they convinced

07cr2977JLS

him of their need for his intelligence and that his words
would not go beyond them, except to judge.

They misled him and played upon his fears, while
simultaneously falsely empathizing. At one point McDonald
asks Mr. Gonzalez to do one favor, to sit up.

> **Agent Henderson** follows up with: We understand you're
> nervous an scared, *but it's just us here in the room,*
> *dude.*

> **McDonald:**

> Yeah, this is – it's just law enforcement only. *This*
> *isn't going any place but...* We're not going to yell at
> you or beat you up. We don't think you're a bad guy or
> anything like that. You're doing what everybody else
> does down here, dude.

A confession should not be used against a suspect that
would induced "by the flattery of hope, or by the torture of
fear." <u>United States v. Dickerson</u>, 530 U.S. 428, 433 2000)
citing *King v. Parratt*, 4 Car. & P. 570, 172 Eng. Rep. 829
(N.P. 1831).

The problem with doing what they did here is the agents
misadvised Mr. Gonzalez about the consequences of waiving
his right to remain silent and to obtain legal counsel by
saying that whatever he said to them would not going
anywhere, when in fact his decision to speak with them would
have extreme consequences and it would determine the outcome
of his case.

> The due process test takes into consideration
> the "totality of all the surrounding circumstances
> – both the characteristics of the accused and the
> details of interrogation." *Ibid.* See also, *Haynes,*
> *supra,* at 513, *Gallegos v. Colorado*, 370 U.S. 49,
> 55... (1962); *Reck v. Pate, 367 U.S. 433, 440 ...*
> *(1961)("All the attendant circumstances upon the*
> *confession must be taken into account.");* Malinski
> v. New York, 324 U.S. 401, 404 ...(1945)("If all

19                                    07cr2977JLS

the attendant circumstances indicate that the confession was coerced or compelled, it may not be used to convict a defendant"). The determination "depends upon a weighing of the circumstances of pressure against the power of resistance of the person confessing." *Stein v. New York*, 346 U.S. 156, 185 ... (1953). <u>Dickerson v. United States</u>, 530 U.S. 428, 433 (2000).

As the Court has said, we "indulge every reasonable presumption against a waiver of fundamental rights" whether they be the right to counsel or the right to remain silent." And we "do not presume acquiescence in the loss of fundamental rights." <u>Johnson v. Zerbst</u>, 304 U.S. 458, 466 (1938). Here, Mr. Gonzalez acquiesced in the face of the pressure and the reassuring lies of the agents.

All of what happened here in this DVD contravenes the Self Incrimination Claus: "No person... shall be compelled in any criminal case to be a witness against himself." U.S. Const., Amdt. 5.

The totality of the circumstances in this matters proves there was no lawful <u>Miranda</u> waiver here.

**C.  ALL THE STATEMENTS MADE BY MR. GONZALEZ SHOULD NOT BE USED AGAINST HIM BECAUSE THEY CONSTITUTE "UNRELIABLE EVIDENCE" AND SHOWN IN THE DVD AND AS SET FORTH IN <u>CRAWFORD V. WASHINGTON</u>, 541 U.S. 36 (2004).**

The DVD illustrates perfectly why the United States Supreme Court has stated that prior testimonial statements in the form of police reports that have not been cross-examined should be admitted against an accused. **<u>Crawford v. Washington</u>, 541 U.S. 36 (2004)**("Statements taken by police officers in the course of interrogations are also testimonial under even a narrow standard... Involvement of

government officers in the production of testimony with an eye toward trial presents unique potential for prosecutorial abuse.").

All the statements made during the interrogation were testimonial, and Mr. Gonzalez never had the opportunity to cross examine the agents.  They are unreliable (which is evidenced by the fact that the  first incriminating statement Mr. Gonzalez made was the very one the agents told him to say, that the drugs did not belong to him).

Such police tactics as viewed in the DVD reveal how the police create unreliable evidence.  It also shows how classic tampering of witnesses and suspects through force or physical threats has evolved, as the Court noted in the 103-page <u>Miranda</u> decision in the 1960s, into far more sophisticated, psychological means of coercion and subtle yet effective questioning on the part of the police.

For this reason alone, the statements should be suppressed.

As the Supreme Court has noted, other countries do not even permit the use of statements taken by the police unless a magistrate is also present. "In India, confessions made to police not in the presence of a magistrate have been excluded by rule of evidence since 1872, at a time when it operated under British law.  Identical provisions appear in the Evidence Ordinances of Ceylon, enacted in 1895... Scottish judicial decisions bar use in evidence of most confessions obtained through police interrogation. <u>Miranda v. Arizona</u>, 384 U.S. 436, 489 (1963).

07cr2977JLS

On this grounds, too, Mr Gonzalez wishes to ask the Court to prevent the use of his statement in the Government's case.

Another reason the statements should be excluded is because they are what Agents McDonald and Henderson said, the results of their "fact-finding" expedition.  They created a police report.  As it is hearsay, and because it is a police report, and because it was made in anticipation of litigation, it should not be permitted to be used at trial against Mr. Gonzalez.  Federal Rule of Evidence, Rule 803(8).  The federal rules prohibit the use of hearsay. Exceptions are outlined in section 803 of the Federal Rules of Evidence [FRE], in pertinent part, 803(8) which permits the use of hearsay if they are public records:

> **Public records and reports.**  Records, reports, statements or data compilations, in any form, of public offices or agencies, setting forth (A) the activities of the official or the agency, or (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding however, in criminal cases matters observed by police officers and other law enforcement personnel.... Id.

In addition, the Complaint in this case, and the attached affidavit and the agents' reports which the Government submitted in its reply brief should also be suppressed because they are all police reports as well. Crawford v. Washington, 541 U.S. 36 (2004); FRE Rule 803(3).[2]

**D.  <u>This Court Should Conduct An Evidentiary Hearing</u>.**

The Court should conduct an evidentiary hearing reviewing the DVD in this matter. If so, the defense reiterates its demand for the discovery requested in part I of this brief, including, but not limited to, the agents' training sources.

It is anticipated that the government will argue that it need not present evidence in support of its position that the <u>Miranda</u> motion should be denied because the defense has not submitted a declaration. The government's position is contrary to the framework established in <u>Miranda</u>. First, requiring the defense to come forward with factual information shifts the burden of proof. It is the government, not the defense, that bears the burden of proof.

> [T]he prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant <u>unless it demonstrates</u> the use of procedural safeguards effective to secure the privilege against self-incrimination. <u>Miranda v. Arizona</u>, 384 U.S. at 444 (emphasis added).

Thus, far from requiring the defense to come forward with anything, <u>Miranda</u> squarely places the burden on the government.

Similarly, it is the government that bears the burden of proving a valid waiver.

> If the interrogation continues without the presence of an attorney and a statement is taken, <u>a heavy burden rests on the government</u> to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel.

<u>Id.</u> at 475 (citing <u>Escobedo v. Illinois</u>, 378 U.S. 478, 490 n.14 (1963) (emphasis added)).

07cr2977JLS

1
2

    This "heavy burden," id., cannot be met absent evidence
of proper warnings and a knowing and intelligent waiver.

3
4
5

>   "Presuming a waiver from a silent record is
>   impermissible.  The record must show, or there must
>   be an allegation and evidence which show, that an
>   accused was offered counsel but intelligently and
>   understandingly rejected the offer.  Anything less
>   is not a waiver."

6
7
8

Id. (quoting Carnley v. Cochran, 369 U.S. 506, 516 (1942)
(emphasis added)).  Thus, both an allegation and evidence
are required.

9
10

    The government's anticipated contention that there are
no contested factual issues is also wrong.

11
12
13
14
15

>   Whatever the testimony of the authorities as to
>   waiver of rights by an accused, the fact of lengthy
>   interrogation or incommunicado incarceration before
>   a statement is made is strong evidence that the
>   accused did not validly waive his rights.  In these
>   circumstances the fact that the individual
>   eventually made a statement is consistent with the
>   conclusion that the compelling influence of the
>   interrogation finally forced him to do so.

16

Id. at 476 (emphasis added).

17

    In short,

18
19
20

>   [t]he warnings required and the waiver necessary in
>   accordance with [the Miranda] opinion . . . are, in
>   the absence of a fully effective equivalent,
>   prerequisites to the admissibility of any statement
>   made by a defendant.

21
22
23
24

Id.  If the government fails to meet these requirements, the
statements are not admissible.  Merely claiming, in a
responsive pleading, that warnings were provided and that
there was a waiver is simply inadequate.

25
26
27
28

>   In dealing with custodial interrogation, we will
>   not presume that a defendant has been effectively
>   apprised of his rights and that his privilege
>   against self-incrimination has been adequately
>   safeguarded on a record that does not show that any
>   warnings have been given or that any effective

07cr2977JLS

alternative has been employed.  Nor can a knowing
and intelligent waiver of these rights be assumed
on a silent record.

Id. at 498-99.  Consequently, this Court should require the
government to prove its case.

In addition, this Court must also determine whether the
warnings provided were adequate.  See United States v.
Bland, 908 F.2d 471, 473-74 (9th Cir. 1990), cert. denied,
113 S. Ct. 170 (1992); United States v. Noti, 731 F.2d 610,
614-15 (9th Cir. 1984).  Obviously they were not adequate
here.

This Court is also required to conduct an evidentiary
hearing under 18 U.S.C. § 3501(a) to determine, outside the
presence of the jury, whether any statements made by Mr.
Gonzalez are voluntary.

Moreover, section 3501(a) requires this Court to make a
factual determination.  Where a factual determination is
required, courts are obligated to make factual findings by
Fed. R. Crim. P. 12.  See United States v. Prieto-Villa, 910
F.2d 601, 606-10 (9th Cir. 1990).  Because "'suppression
hearings are often as important as the trial itself,'" id.
at 609-10 (quoting Waller v. Georgia, 467 U.S. 39, 46
(1984)), these findings should be supported by evidence, not
merely an unsubstantiated recitation of purported evidence
in a prosecutor's responsive pleading. Even without
impeachment evidence, the DVD speaks for itself.  The waiver
is the result of a coerced, uninformed, unintelligent
decision which never should have come about anyway after Mr.
Gonzalez said he did not wish to speak.

*The government bears the burden, not the defense,* to prove that the waiver was voluntary, knowingly, and intelligently waived, and that Mr. Gonzalez had a full and accurate understanding of the nature of his rights and the consequences of waiving those rights, which, the DVD makes clear, he did not.

Requiring the defense to come forward with factual information shifts the burden of proof.  It is the government, not the defense, that bears the burden of proof. The government has not met its burden of proof.  The government's Exhibits in support of its position are not admissible evidence nor is it reliable as they merely parrot the statements that are the subject of the controversy (they are irrelevant) so it has not met its burden.

**V.**

**CONCLUSION**

For the foregoing reasons, Mr. Gonzalez respectfully requests that the Court grant his motions to compel discovery and to suppress Mr. Gonzalez' statements and evidence stemming from them.

Dated:  December 17, 2007        Respectfully submitted,

                                //JOAN KERRY BADER
                                JOAN KERRY BADER

07cr2977JLS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

07cr2977JLS