1  JOAN KERRY BADER
   California State Bar No. 172586
2  964 Fifth Avenue, Suite 214
   San Diego, California  92101-6128
3  Telephone:  (619) 699-5995
   FAX (619) 699-5996
4  Attorney for Defendant GONZALEZ

5
                    UNITED STATES DISTRICT COURT
6
                  SOUTHERN DISTRICT OF CALIFORNIA
7
                 **(HONORABLE JANIS L. SAMMARTINO)**
8
   UNITED STATES OF AMERICA,        )     CASE NO. 07CR2977JLS
9                                    )
                    Plaintiff,       )     DATE: February 4, 2008
10                                   )     TIME: 9:30 a.m.
   v.                                )
11                                   )     RESPONSE TO GOVERNMENT'S
   ALAN O. GONZALEZ,                 )     REPLY TO DEFENDANT GONZALEZ'
12                                   )     MOTIONS TO SUPPRESS AND
                    Defendant.       )     COMPEL DISCOVERY
13  _____  )

14
   TO:  KAREN HEWITT, UNITED STATES ATTORNEY;
15        STEVEN DE SALVO, ASSISTANT UNITED STATES ATTORNEY:

16
        **PLEASE TAKE NOTICE** that on Monday, February 1, 2008, at 9:30 a.m.,
17
   or as soon thereafter as counsel may be heard, the defendant, Alan
18
   Gonzalez, by and through his counsel, Kerry Bader, will again ask this
19
   Court to enter an order granting the motions he filed previously.
20
   //
21
   //
22
   //
23
   //
24
   //
25
   //
26
   //
27
   //
28

                              1                    07cr2977JLS

```
1  JOAN KERRY BADER
   California State Bar No. 172586
2  964 Fifth Avenue, Suite 214
   San Diego, California  92101-6128
3  Telephone:  (619) 699-5995
   fax (619)699-5996
4  Attorney for Defendant GONZALEZ
```

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**(HONORABLE JANIS L. SAMMARTINO)**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 08CR2977JLS |
| | ) | |
| Plaintiff, | ) | DATE: February 1, 2008 |
| | ) | TIME: 9:30 a.m. |
| v. | ) | |
| | ) | STATEMENT OF FACTS AND |
| ALAN O. GONZALEZ, | ) | MEMORANDUM OF POINTS |
| | ) | AND AUTHORITIES IN SUPPORT |
| Defendant. | ) | OF DEFENDANT'S MOTION |
| _____ | ) | |

**I.**

**CORRECTION**

The Government provided in discovery a review of Mr. Gonzalez'
law enforcement contact.  That discovery indicates that Mr. Gonzalez
had a matter in the Superior Court of Yuma, Arizona which has been
resolved.  It is believed to be a misdemeanor.

In contrast, in its Reply Brief, the Government asserts that mr.
Gonzalez has been arrested or detained six previous times and has a
felony conviction for Assault With the Intent to Rape.

The Government has made the same allegation in each of its
briefs. Defense counsel spoke with the Assistant United States
Attorney about this and he has confirmed that this was a drafting
mistake and that neither the allegation of six prior detentions nor
the conviction are attributable to Mr. Gonzalez.

1  Mr. Gonzalez respectfully asks the Court to strike these
2  allegations from the record as they only serve to prejudice Mr.
3  Gonzalez unfairly.

4  Mr. Gonzalez remains on bond and he is living in Yuma, Arizona
5  with his parents where he is attending college.

6  ## II.
## DISCOVERY OBLIGATIONS AND DUE PROCESS OF LAW
7

8  Again, Mr. Gonzalez asks the Court to order the Government to
9  preserve all rough notes of *all* of the agents who were involved in
10 this case, not just Agent McDonald who took notes during the
11 interrogation.

12 Specifically, the defense asks the Court to order the Government
13 to provide the defense with the notes prior to the suppression hearing
14 in this matter so that there will be no need to interrupt the hearing.

15 <u>Henthorne</u> evidence is also relevant at this time (before the
16 suppression hearing).  Therefore, the defense respectfully asks the
17 Court to order the government to provide this prior to the evidentiary
18 hearing.  The government has taken the position that it is unaware of
19 and opposes disclosure of any criminal investigation of any government
20 witness. Govt Reply Brief, pp. 5-6 (Document 20 on this Docket).

21 Despite the government's position, such evidence is relevant and
22 the defense is entitled to such impeachment information, particularly
23 with regard to the two interrogating agents.

24 //
25 //
26 //
27 //
28 //

III.

**THE STATEMENTS MUST BE SUPPRESSED**

**A.  The agents did not, as the government suggests, simply offer to have Mr. Gonzalez cooperate; rather, the agents advised Mr. Gonzalez his words would not go to anyone but a judge, and, that they insinuated that this would benefit him, thereby contradicting the protections of the Fifth Amendment by failing to advise him that his words would be used against him**

The Government incorrectly relies on <u>United States v. Guerrero</u> to suggest that the agents in this case promised to tell the prosecutor that Mr. Gonzalez had cooperated with them. 847 F.2d 1363 (9th Cir. 1988); Gov't Reply Brief p. 3 (Docket Document Number ).

This characterization is incorrect.  The agents never said they would advise the prosecutor of cooperation on the part of the Mr. Gonzalez.  In fact, the agents specifically mislead Mr. Gonzalez into believing that no one, only themselves or a judge, would learn what he told them.  The agents specifically, told Mr. Gonzalez his words would not go beyond the four walls of their office, except to a judge. *See* page nine, Transcript of Interrogation, file-stamped "Received" by the District Court, January 30, 2008:

[starting at line 5]

**Mr. Gonzalez: if you decide to answer questions now you still have the right to stop questions at any time.**

**Agent McDonald: Do you understand that?**

**Mr. Gonzalez: Yes.**

**Agent McDonald: Okay.  All right, thank you.  So, do you wish to answer the question?**

**Mr. Gonzalez: Unh.**

1    Agent Henderson: Look, here's the deal.  Here's the deal,

2    man.  Like he said, you don't have to talk to us, but we have to

3    make a determination here as to what's going on.

4         Mr. Gonzalez: That, I know.

5         Agent McDonald: You know, we got you, we got another vehicle

6    that's exactly the same weight as yours is, so, you , this is

7    your opportunity to kind of say, hey, it's not my stuff, you know

8    what I mean?

9    Is this really what the Fifth Amendment stands for?

10        Gonzalez: Yeah.

11        Henderson: you know, I don't think it's your stuff, but this

12   [is] your opportunity to tell us that, okay, so do you think you

13   want to talk to us and tell us about what happened today?

14        [page 10]

15        Gonzalez: Yeah, well, look, the thing is that.

16        McDonald: Hold on, hold on, before you start making any

17   additional statements, you know, we have to finish the forms, so

18   I mean, it's up to you.

19   Gonzalez: Oh, I know.

20   McDonald: I don't want [you] to say anything, you know, without

21   understanding, you know.

22        Henderson: If he wants to.

23   McDonald: That you don't have to talk to us

24   If Agent Henderson truly does want the client to understand the

25   ramifications of waiving his rights, why does he not tell him those

26   ramifications?  Instead, the agents go on to say they are not here to

27   judge Mr. Gonzalez and they specifically tell him they are there to

28   gather facts and then they completely contradict the Fifth Amendment

4

1  warnings by telling Mr. Gonzalez that they need the facts but by
2  gathering the facts they will not be able to determine if he will
3  serve jail time when in fact their "fact-gathering" will lead
4  precisely to whether he will serve jail time as those facts, which are
5  his words, will lead him to jail. Transcript p. 10, lines 16-24.

6     In Lines 27-28, page 10, Agent Henderson outrightly informs Mr.
7  Gonzalez: **"What we can do is, we can take what you tell us and we can**
8  **tell the judge what you told us.  That's what we do, ok?"**

9     This is the heart of the matter: by telling Mr. Gonzalez his
10 statements will not be told to anyone but a judge, they are
11 suggesting, or even advising him his words will not be used against
12 him when and even benefit him, when, in fact, his words would promptly
13 be forwarded to the Assistant United States Duty Attorney who, given a
14 statement, would set the case up for prosecution.

15    This of course, contravenes the entire Fifth Amendment right that
16 all suspects have, to know that they can remain silent, and that their
17 words, if forth-coming *will be used* in a court of law against them *by*
18 *a prosecutor*, and they will not be kept secret.

19    This was compulsion, which the Fifth Amendment forbids, whether
20 it is compulsion by physical force or psychological force.

21 **B.  By advising an arrestee to say the drug does not belong to him is**
   **tantamount to a law enforcement solicitation to make a confessionthat**
22 **amounts to police overreaching**

23    Just eight lines after he invoked his right to remain silent,
24 pushed himself away from the table where he had been reading his
25 rights, and told the agents he did not want to speak to them, Agent
26 McDonald specifically advised Mr. Gonzalez to admit he knew he was
27 transporting a drug but that he should say he was not the owner:

28

5

1          Agent McDonald: 'You know, we got you, we got another
2    **vehicle that's exactly the same weight as yours is, so, you know,**
**this is your opportunity to kind of say, hey, it's not my stuff,**
3    **you know what I mean?"**

4    It is fundamental that when someone physically withdraws from an

5    interrogation and has just expressed his desire to remain silent, the

6    agents must abide that, unless and until, the suspect restarts the

7    interrogation, which Mr. Gonzalez never did!  If a defendant

8    "indicates in any manner and at any stage of the  process that he

9    wishes to consult with an attorney before speaking, there can be no

10   questioning." <u>Miranda v. Arizona</u>, 348 U.S. 436, 444-445 (1966).

11   ["[P]hysical reactions" and "some non-verbal communication, such as a

12   nod or a shake of the head" can be used as evidence of a suspect's

13   communications. <u>United States v. Velarde-Gomez</u>, 224 F.3d 1062, 1070-71

14   (9th Cir.), *amended and superceded on other grounds*, No. 99-50602,

15   2000 WL 1514639 (9th Cir. 2000).  *And see:*  <u>Edwards v. Arizona</u>, 451

16   U.S. 477, 484-85 (1981)("having expressed his desire to deal with the

17   police only through counsel, is not subject to further interrogation

18   by the authorities until counsel has been made available to him,

19   unless the accused himself initiates further communications, exchanges

20   or conversations with the police.").

21   Instead, just after Mr. Gonzalez pushed his chair away and said,

22   **"Unh,"** Agent Henderson piped up and said, **"Look, here's the deal, man.**

23   **Like he said, you don't have to talk to us, but we have to make a**

24   **determination here as to what's going on."**

25   These agents should have honored Mr. Gonzalez' invocation and put

26   their pens down stopped the interrogation immediately.  Miranda

27   warnings are not "simply a preliminary ritual to existing methods of

28   interrogation" but instead they are a specific requirement of the

                                    6                    07cr2977JLS

United States Constitution. <u>Dickerson v. United States</u>, 120 S.Ct. 2326m 2334 n. 4 (2000).  There is no right on the part of law enforcement to bargain away a suspect's Fifth Amendment right to remain silent or his Sixth Amendment right to a lawyer, and certainly not based on their "need to make a determination."  This is not even a legally adequate or accurate <u>Miranda</u> warning.

**C.  The government's reliance on <u>Illinois v. Perkins</u> is misplaced and of no benefit to them**

The government asserts that the agents' attempts to lull Mr. Gonzalez into a false sense of security in order to get him to speak are authorized by law. Gov't reply Brief at p. 5.  This is an inaccurate statement of law because in <u>Illinois v. Perkins</u>, the Supreme Court was upholding the statements of a defendant who was in custody and who was boasting to an undercover police officer about his criminal activity.  The Court held that because Perkins did not know he was speaking to a police officer and therefore, because was not in a "police-dominated atmosphere," "compulsion" was not present. 496 U.S. 292 (1990).

Here, Mr. Gonzalez was at the United States Customs and Border Protection offices in custody and aware that he was being accused of some smuggling crime.  The agents fully identified themselves as agents.

The <u>Perkins</u> Court allowed the statements at trial because the suspect had no reason to feel that the undercover agent had any legal authority to force the suspect to answer questions or that the agent could effect the suspect's future treatment in any penological or legal way.

1   Thus, in Mr. Gonzalez' case, it is absurd for the government to

2   absolve its agents' violations by relying on the Perkins case to

3   justify the failure to abide by the <u>Edwards</u> and <u>Miranda</u> requirements.

4       "It is the premise of <u>Miranda</u> that the danger of coercion results

5   from the interaction of custody and official interrogation....

6   questioning by captors, who appear to control the suspect's fate, may

7   create mutually reinforcing pressures that the Court has assumed will

8   weaken the suspect's will." Id. at 297 (Brennan, J., concurring

9   opinion).

10                               **IV.**

11

12                            **<u>CONCLUSION</u>**

13

14      For the foregoing reasons, Mr. Gonzalez again respectfully asks

15  the Court to grant his motions to compel discovery and to suppress

16  Mr. Gonzalez' statements and evidence stemming from them.

17

18  Dated:  February 1, 2008      Respectfully submitted,

19

20

21                              <u>//Joan Kerry Bader</u>

22                              JOAN KERRY BADER

23

24

25

26

27

28

8                                      07cr2977JLS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

07cr2977JLS