UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>v.<br><br>ALAN O. GONZALEZ,<br><br>          Defendant. | Criminal No. 07-CR-2977-JLS<br><br>**ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS STATEMENTS**<br><br>[Doc. No. 16] |

On February 4, 2008, an evidentiary hearing was held regarding Defendant's motion to suppress statements obtained by the government following his arrest. Present at the hearing were the defendant, Alan O. Gonzalez, represented by counsel Joan Kerry Bader, and Assistant United States Attorney Steven D. De Salvo, representing Plaintiff United States of America. Having considered the evidence presented at the hearing, the submissions of the parties, and the applicable legal authorities, the Court concludes that Defendant's post-arrest statements were voluntarily made and taken in compliance with *Miranda v. Arizona*, 384 U.S. 436 (1966). Accordingly, Defendant's Motion to Suppress Statements will be denied.

**Facts**

Defendant was arrested on August 30, 2007 at the Calexico, California West Port of Entry

after agents discovered 53.88 kilograms of marijuana inside the gas tank of the vehicle he was driving. After his arrest, Defendant was interrogated by U.S. Immigration and Customs Enforcement Agents McDonald and Henderson. The interrogation was recorded on videotape; this videotape was played during the evidentiary hearing and, in conjunction with a 28-page transcription of the interrogation submitted by the defense, constituted the sole evidence presented at the hearing.

The videotape shows that Defendant was initially asked some biographical or background questions, such as his name, address, and identifying physical characteristics. Agent McDonald then told Defendant, "Okay, we're going to advise you of your rights, this, as I said is your opportunity to give us your side of the story, but before we ask you any questions, you have to read and initial each of these lines, okay?" (Def.'s Tr. 7:23-27). Defendant proceeded to read aloud each portion of a pre-printed U.S. Immigration and Customs Enforcement "Statement of Rights and Waiver" form. (Ex. C, United States' Resp. and Opp'n to Def.'s Mot. to Suppress.) After reading aloud each portion of the "Statement of Rights," Defendant was asked whether he understood, and was asked to place his initials beside each paragraph, which he did.

Before beginning this process, Agent McDonald asked Defendant to slide his chair a few feet closer to Agent McDonald's desk, thus enabling Defendant to use the desk to write on as he went through the form. After Defendant finished reading and initialing each sentence of the "Statement of Rights" form, Agent McDonald asked Defendant if he wanted to answer his questions. Defendant slid his chair back to its original position and grunted.

An exchange then followed during which the agents reiterated on several occasions that Defendant did not have to answer their questions, but also told Defendant that this was his "opportunity" to talk to them.[1] During this exchange, Defendant expressed concern regarding

---

[1] For example, Agent Henderson told Defendant "Here's the deal, man. Like he said, you don't have to talk to us, but we have to make a determination here as to what's going on." (Def.'s Trans. 9:15-18).
  Agent Henderson also told Defendant he didn't believe that Defendant owned the drugs, and asked Defendant if he wanted tell them what happened. When Defendant started to answer, however, Agent McDonald stopped him and said "I don't want you to say anything, you know, without understanding ... that you don't have to talk to us." (*Id.* at 9-10:25-9.)

the amount of prison time he was facing. The agents told him they were not judges, that they were only there to "gather the facts," and that they could take what was said to them to the judge. (*Id*. 10:11-28.) Agent McDonald specifically told Defendant, "I'm not going to make the determination [regarding sentence], you know, this is just your opportunity, freely, voluntarily to talk to us, yes or no, that's all." (*Id.* 10:21-24.) Ultimately, Defendant agreed to answer the agents' questions and then Agent Henderson asked Defendant to "finish reading the form," by which he meant the "Waiver of Rights" portion of the departmental pre-printed form. (*Id*. at 11:15-18.) Agent McDonald read the waiver language[2] aloud, and Defendant signed his name to the document. (Ex. C, United States' Resp. and Opp'n to Def.'s Mot. to Suppress.) The agents then questioned Defendant and he admitted knowledge of the marijuana inside the vehicle and that he was to be paid $1500 to cross the vehicle into the United States.

**Discussion**

Defendant contends his statements must be suppressed because the agents failed to honor the invocation of his right to remain silent and because the Government's proffered *Miranda* waiver is invalid as it was not knowingly, intelligently, and voluntarily made. Although presented in the context of an involuntary *Miranda* waiver, Defendant also maintains his statements were the result of coercion and material misrepresentations. Thus, the Court will also address the voluntariness of Defendant's statements.

A.   Miranda.

In *Miranda v. Arizona*, 384 U.S. 436 (1966), the Supreme Court held "that a person questioned by law enforcement officers after being 'taken into custody or otherwise deprived of freedom of action in any significant way' must first 'be warned that he has a right to remain

---

[2] The waiver portion of the form provides as follows:

I have had the above statement of my rights read and explained to me and I fully understand these rights. I waive them freely and voluntarily, without threat or intimidation and without any promise of reward or immunity. I was taken into custody at <u>6:20 a.m.</u> (time), on <u>08/30/2007</u> (date), and have signed this document at <u>11:30 a.m.</u> (time), on <u>08/30/2007</u> (date).

Ex. C, United States' Resp. and Opp'n to Def.'s Mot. to Suppress.

silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed.'" *Stansbury v. California*, 511 U.S. 318, 322 (1994) (quoting *Miranda*, 384 U.S. at 444). The burden is on the government to show that *Miranda* rights were administered and that the defendant agreed to waive them. *Miranda*, 384 U.S. at 475. Proof of waiver must be by a preponderance of the evidence. *Colorado v. Connelly*, 479 U.S. 157, 168-69.

In case at hand, the evidence is undisputed that Defendant was advised of his *Miranda* rights. The videotape clearly establishes Defendant was informed, by virtue of his reading from the "Statement of Rights" form, of the right to remain silent, that any statement could be used against him in court or in other proceedings, and that he had the right to court-appointed counsel prior to questioning. The Court is persuaded that Defendant understood these rights, as evidenced by Defendant's initials on the "Statement of Rights" form and his affirmative responses when asked whether he understood each right as he read it.

Contrary to Defendant's assertions, the evidence does not demonstrate that Defendant invoked either his right to remain silent or his right to counsel. At no point during the videotaped proceedings did Defendant voice a desire to cease questioning or to have an attorney present during questioning. Having viewed the videotape, the Court cannot draw the conclusion urged by Defendant — that Defendant's moving his chair back to its original position after reading and initialing the "Statement of Rights" portion of the form was tantamount to an invocation of the right to remain silent. Although Defendant made some unintelligible sound as he moved the chair, he certainly did not say "no" in response to the agents' request that he answer their questions, nor did he thereafter convey a desire not to speak to the agents.

The evidence does not support Defendant's claim that he invoked his right to remain silent a second time when he told the agents "Well, okay, the only thing that I have to say is, it wasn't my stuff. That's it." (Def.'s Tr. 11:2-3). This statement was made while Defendant was deciding whether he wanted to talk to the agents and demonstrates that Defendant *did* have something he wanted to say to agents, rather than a desire to say nothing at all. Furthermore, this statement was followed by the agents' requirement that Defendant execute the written

waiver prior to questioning. Thus, taken in context, the Court cannot conclude this statement constituted an invocation of Defendant's right to remain silent.

The question then turns to the validity of Defendant's *Miranda* waiver. The Government has proffered a written waiver of rights signed by Defendant which is consistent with the videotaped interview proceedings. Defendant contends that the waiver is invalid because the agents repeatedly told Defendant that speaking with them was his opportunity to tell his side of the story, instead of telling him of his opportunity to remain silent. Defendant further disputes the validity of the waiver because, instead of informing Defendant that his statements could be used against him, the agents led him to believe he would benefit by saying the drugs did not belong to him. Defendant further argues that he was led to believe that his statements would go only to a judge (and not a prosecutor or jury) and that his statements would only benefit him.

*Miranda* rights must be knowingly, intelligently, and voluntarily waived. *United States v. Rodriguez-Rodriquez*, 364 F.3d 1142, 1146 (9th Cir. 2004). In determining whether a waiver has occurred, the court must examine the totality of the circumstances, including: (1) whether the defendant signed a written waiver; (2) whether the defendant was advised of his rights in his native tongue; (3) whether the defendant appeared to understand his rights; (4) whether a defendant had the assistance of a translator; (5) whether the defendant's rights were individually and repeatedly explained to him; and (6) whether the defendant had prior experience with the criminal justice system. *United States v. Garibay*, 173 F.3d 534, 538 (9th Cir. 1998).

These factors all point toward the validity of Defendant's waiver. First, Defendant executed a written waiver. A written waiver of *Miranda* rights is strong evidence that the waiver was valid. *Derrick v. Peterson*, 924 F.2d 813, 824 (9th Cir. 1990). Second, Defendant was advised of his rights in the English language, which appears to be Defendant's native tongue. In any event, Defendant exhibited absolutely no inability to understand or communicate in the English language. Third, Defendant did appear to understand his rights. He read each right aloud from the "Statement of Rights" form and was then questioned by the agents as to whether he understood each portion and was asked to place his initial beside each sentence listed on the form, which he did.

Although Defendant contends that this explanation of rights was vitiated by the agents' extraneous comments, the evidence establishes that Defendant was clearly informed of each of his rights and exhibited an understanding of them. Even though the agents phrased Defendant's decision to talk with them as an "opportunity" on several occasions, they also repeatedly explained to him that he had the right to remain silent and insisted he execute the written waiver form prior to interrogation. Furthermore, the agents promised no benefit to Defendant in exchange for his statements and clearly informed him that anything he said could be used against him.[3] Thus, Defendant's rights were individually explained to him, and were repeated to him before he executed his waiver.

As to the final factor in the totality of the circumstances analysis, Defendant has had some prior exposure to the criminal justice system. He was previously arrested for failing to appear for a traffic violation. In addition, he revealed that his brother had recently been arrested for importation of drugs and that his father works in the criminal justice system. Thus, Defendant's personal life experiences suggest that Defendant may have been familiar with his *Miranda* rights and his option to waive those rights.

Viewing the totality of circumstances in this case, the Court is persuaded that Defendant was properly advised of his *Miranda* rights and executed a knowing, voluntary, and intelligent waiver of those rights. As such, any statements obtained subsequent to Defendant's waiver are admissible under *Miranda*.

B.     Voluntariness.

The government must prove voluntariness of a confession by a preponderance of the evidence. *Lego v. Twomey*, 404 U.S. 477, 489 (1972). "A confession is involuntary if coerced either by physical intimidation or psychological pressure." *United States v. Haswood*, 350 F.3d 1024, 1027 (9th Cir. 2003) (citation omitted). The test for voluntariness is whether, viewing the

---

[3] With respect to the use of his statements, the record reflects that Defendant read aloud a portion of the "Statement of Rights" form that provides "Anything you say can be used against you in court or other proceedings." Defendant was asked whether he understood that, and replied, "Yeah, because it, it..." Defendant then placed his initials beside this admonishment on the form.

totality of circumstances, "the government obtained the statement by physical or psychological coercion or by improper inducement so that the suspect's will was overborne." *United States v. Harrison*, 34 F.3d 886, 890 (9th Cir. 1994) (quotation omitted).

While the totality of the circumstances contains no "talismanic definition" of voluntariness, courts have considered the following factors in assessing voluntariness: the youth of the accused, his intelligence, the lack of any advice to the accused of his constitutional rights, the length of detention, the repeated and prolonged nature of the questioning, and the use of physical punishment such as the deprivation of food or sleep. *Haswood*, 350 F.3d at 1027, quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 224 (1973).

None of these factors support a conclusion that Defendant's will was overborne in this case. Although Defendant is relatively young — he was 21 at the time of the interview — he had reached the age of majority by any form of measure and appeared to possess a maturity level consistent with his age. Defendant also appeared to possess at least ordinary intelligence: his language skills were good, he could easily read and write the English language, and he has an employment history in car and furniture sales. Defendant was advised of his constitutional rights by the agents, the total length of the interrogation was approximately 30 minutes, and he had been in police custody for only five hours when the interrogation began. There was no physical punishment such as the deprivation of food or sleep. The interview took place in the morning hours and the agents provided Defendant with water during the interview. Indeed, Defendant appeared calm, albeit upset, throughout the interview, and did not appear to be intimidated by the agents. Defendant was not handcuffed or restrained during the interrogation and he even proceeded to make small talk with Agent Henderson when the interrogation was over.

The Court does not believe the agents' comments about Defendant's "opportunity" to tell his side of the story or their suggestion that they knew the marijuana did not belong to Defendant amounted to coercion or trickery to a degree that Defendant's will was overborne as a result. Defendant was never promised anything, even implicitly, in return for his statements. Defendant was repeatedly told he did not have to answer the agents' questions and there is nothing about

the environment in which the statements were given or the manner in which Defendant was questioned to suggest threats or coercive conduct by the agents. Thus, in view of totality of the circumstances, the Court finds that the Government has met its burden of establishing that Defendant's statements were voluntarily made.

### Conclusion

For the reasons set forth above, the Court concludes that Defendant's post-arrest statements were taken in compliance with *Miranda* and were voluntarily made. Accordingly, Defendant's motion to suppress statements is **HEREBY DENIED**.

**IT IS SO ORDERED**.

DATED: February 5, 2008.

*Janis L. Sammartino*
Honorable Janis L. Sammartino
United States District Judge